And our final case of argument for the morning is United States v. Kendrick. Mr. Mielke. Good morning, Your Honor, and may it please the Court. My name is Scott Mielke and I'm representing the appellant Eric Kendrick. With the Court's permission, I would like to reserve two minutes for rebuttal. This appeal, which follows a denial of a motion to suppress, foundationally asks the question of whether a person has been subjected to a Fourth Amendment search when the government has conducted prolonged surveillance of the person's commercial business by using a poll camera, which has been installed in such a fashion that it can see an area that is uncovered in whole or in part by a privacy fence which has been placed around the business. Here because Mr. Kendrick exhibited a subjective expectation of privacy in that area of his commercial business, and that expectation of privacy was objectively reasonable, we believe this answer is yes. But, okay, so there's an area that can be viewed from the street, and then there's an area that can't be viewed from the street, yes? Yes, Your Honor. As the government points out, as the record indicates, there was a 30-foot hole that was placed in the privacy fence, so a portion of, I guess you can call it the commercial curtilage or the area right in front of the commercial business, could be seen by a passerby, but not the entire area in front of the commercial business. Right. They, and I went back and read the affidavit that supported the application for a search warrant. Is there any facts in the affidavit that took place in the area that could not be viewed from the street? Because it seemed like the affidavit relied, with regard to the facility or the building, almost entirely upon people going in and out of the garage doors which were viewable from the street. So, your point, Your Honor, you're correct. Every activity that was cited in the affidavit itself could have been viewed by a person on the street that they relied on for the search warrant and Mr. Kendrick's business in-house. So, what is, is there, is there any authority for the proposition that the government is violating someone's Fourth Amendment rights by using a poll camera or any surveillance method to view a private area even though the government isn't going to use any of that information in a warrant application in a motion to suppress? Because a motion to suppress is targeted, we're not talking generally about some 1983 claim here or a violation of privacy, we're talking about a motion to suppress, right? That's correct, Your Honor. And so, you know, perhaps in some other context, it might be relevant that the government is able to view areas that aren't viewable from the street. But I wondered whether in the context of a motion to suppress, whether any of that information is relevant to our inquiry given the fact that none of it was relied upon by the government when asking for the search warrant. Well, Your Honor, in fact, and I would respectfully disagree, I believe it was relied upon simply because the only reason that the evidence or the activities that took place were even observable is because there was an officer that was observing the poll camera at the time or a couple hours before the events gave rise and gave note to Officer Kincaid who ended up coming to the scene that, hey, there may be some criminal activity on the, at foot, at issue. And so then they drove to the, to the spot where Mr. Kendrick's commercial business was located. And even after- But what, what was it that that officer viewed? I thought that what that officer viewed was someone going in and out of the house using the garage door. You're correct, Your Honor. What all he, all that he observed specifically was that somebody was entering the building. But again, the only reason they had that evidence in the first place was what we would claim was the search that was the poll camera that was looking both inside and outside of the property. But that's not really, you know, when we're trying to figure out if there's a reasonable expectation of privacy, we're not really looking at kind of what we're trying to figure out is whether Mr. Kendrick's would have a reasonable expectation of privacy of someone going in and out of his house through the garage door. And when we consider that kind of objective test, don't we have to consider whether or not the entrance could have been viewable by someone walking down the street, whether or not the police did it gain the information that way? I think you have to, Your Honor, in a certain way, but it still comes to the fact that I think the concern and thing is the way that they had the evidence to even go there in the first place and look at it. I mean, I could put it akin to if so, if the, if an officer had gone into a house, put a microphone in and we're listening to people and by those conversations, they were told, hey, person A is going to be coming to a structure with some drugs on a certain date. And if they get that information from an illegal way, it effectively comes into a fruit of the poisonous tree argument is the only reason they even need to observe at that time to be at that location was because they had gotten the information from an unconstitutional search without a warrant. And so that's where our concern relies upon here is the only reason Officer Kincaid was at the scene at the time of this is because somebody was monitoring this poll camera that was put up in a way so that it could see above the area of the fenced in business that had been put in again, admittedly not by Mr. Kendrick, but by his landlord. But Mr. Kendrick, once that fencing was installed, had every reason to utilize the privacy functions that the fencing does. I mean, to do otherwise would essentially say, whoever's the one who pays for a fence or installs a fence, or is the only one that is able to get fourth amendment protections. No, I think I agree with you there, but I think you'd have a much stronger case if the activity of the government relied upon to kick off the Officer Kincaid surveillance of the Massachusetts Avenue building was took place in the area that was not viewable, right? So let's say that Mr. Kendrick was engaged with a person in the corner that was hidden from the street because of the fencing, and the government saw that through the poll camera and said, hey, something's amiss. So go take a look. I think you definitely have a stronger case under those facts. But here, what the poll camera saw was something that anyone from the street could see. And so I still wonder what the basis is for Mr. Kendrick's reasonable expectation of privacy with regard to those circumstances. In your honor, while I think you may be correct as far as coming in the building, one of the other things that comes out is people coming out of the building as well. And I believe, and I'd have to confirm it, and I will look, as to whether or not when they entered back into a vehicle, whether that took place within the area that is confined within the fencing or if it was slightly outside of it. But yeah, I mean, there's still, through the evidence that they use and through the poll camera and the observations of Officer Kincaid, who, for the most part, he acknowledges, his observations, even when he was at the scene, he was still looking at the poll camera footage. He wasn't even directly looking at a lot of what was going on at this actual scene. And so to the extent some of that took place within the confines of the privacy fence that was being placed there, I believe that we do potentially run into an issue. And then even still beyond that, the only reason that they made the stop at all as far as stopping the vehicle that left the premises was, once again, based upon information that Officer Kincaid saw through the poll camera, that they were only there because of that. And absent them going there in the first place, knowing to, hey, you need to be going on the scene now because things are going on at the building, they would have never stopped that  vehicle. And while, of course, a pretextual search is completely fine, when you are doing a pretextual search based on illegally obtained evidence, you, again, run into a fruit-of-the-poisonous-tree issue, which is what Mr. Kendrick would be asserting here in this case. Going back, this court has, a couple of times in recent years, had an opportunity to review warrantless poll camera cases, both the Tuggle case in 2021 and the House case in 2024. In both cases, this court ultimately found, and I would say with some reluctance, especially in the Tuggle case, that the warrantless poll camera searches did not amount to a search. And in both cases, the court focused on the fact that nothing in those respective records indicated that either of those criminal defendants had exhibited any type of subjective expectation of privacy in the curtilage of their private residence. They didn't put up any type of shrubbery, any type of privacy fence. And actually, Your Honor, with a minute left, I'd like to reserve the remainder of my time for rebuttal. Thank you. Certainly, counsel. Mr. Moore. Good morning, Your Honors. Adam Moore on behalf of the United States. May it please the Court. Tuggle and House both held that when police use a poll camera to observe evidence that is visible to the public and the camera is in a lawful location and uses ordinary technology, no search occurs. Those principles resolve this case because all those criteria are present here and there's no reason to relitigate this court's precedents. This is not a true fence case. My friend on the other side emphasizes that there was a fence, trying to, in effect, establish a bright-line rule that when there is a fence present, that Tuggle and House rule no longer apply. But as the district court found, all the evidence viewed through the camera was visible through the 30-foot gap in the fence. My friend did mention briefly that he wasn't sure whether the exiting from the business was visible through the 30-foot gap. It was. All the evidence in the case in search warrant affidavit was visible through the 30-foot gap in the fence or some of it took place outside the fence on a public street. Judge Lee, you mentioned the possibility that perhaps the camera viewed some portion of the premises that were not visible through the 30-foot gap. That argument is doubly forfeited because it was not raised until Mr. Kendrick's reply brief on appeal. In addition, it is foreclosed by the district court's factual findings, which found as a factual matter again, that police observed nothing through the camera that was not visible through the 30-foot gap. And finally, as you were exploring, it is also legally irrelevant because Mr. Kendrick must establish a reasonable expectation of privacy in the evidence that the government seeks to use against him, not demonstrate that he has an abstract constitutionally protected interest in his property as a whole. Well, this is what concerns me. The government uses a poll camera that views both, let's call it, let's take it out of this business context. Let's say a residence looks over a fence that has a small gap. And the government has a fence there for two weeks, solidly just viewing all the private things going on, the barbecues, the sunbathing, slip and slides, whatever in the private part. Also see some illegal stuff happening in the privately screened part. And just on the last day, see something that catches someone's eye when they're looking at the camera that takes place in front of that little open part. Then the government uses that little open part, that one fact to get a warrant upon which the government goes and searches the house. All the while, the government has gathered all of this private information. And my question to you is, I guess, in that scenario, should we be concerned about the Fourth Amendment at all in that case? I appreciate your concern. That concern would not cash out in the exclusionary rule context. The result would not be that you'd exclude the evidence that the government validly saw. And maybe I could draw an analogy to respond to your question to the protective sweep context. Imagine police perform a protective sweep and they see some evidence in plain view. They also rifle through the drawers. The fact that police rifle through the drawers and violate the Fourth Amendment in that way doesn't turn the observation of the plain view evidence into a search. The same principle controls here. The fact that the government incidentally, again, forfeited and inconsistent with the district court's factual findings, but supposing the camera did in fact view a portion of the property that was not visible through the 30-foot gap, that incidental viewing does not turn the observation of the publicly visible evidence into a search. I understand the rationale. I just find it a little unsettling. And I appreciate that concern. And if that case were the current case, I assume it would be a little bit harder of a case for me to make. But again, that's not the case that we're dealing with here. Because as the district court found, again, all the evidence in the search warrant affidavits and again, all the evidence viewed by the camera was visible through the 30-foot gap. And unless the court has any further questions, we ask this court to affirm. Thank you, counsel. Anything further? Mr. Mielke? Yes, just briefly, Your Honor. As I was discussing just before I stopped my time on main brief, I believe this case is different from Tuggle and House. And in both of those cases, the court noted that it wasn't dealing with the more challenging situation where the government intentionally placed a camera to see over a fence that was observing a private residence. And while we're not dealing with a private residence here, we're dealing with a commercial business, it nevertheless knowingly placed a camera in a way that it could see over that fence. And by supporting that kind of conduct, and again, they acknowledged that they got approved for the camera, and it was only after the fence was put up that they actually installed the camera. So they knew it was going to be seeing stuff that was above the privacy fence. And allowing such conduct and saying that that does not constitute a search, I think runs afoul of a lot of things. And it's not something I think society is willing to accept, whether it's at a private residence or a commercial business. Once you get a privacy fence up, you want the privacy that that provides. So based on the foregoing, Your Honor, we ask that this court reverse the district court's denial of Mr. Kendrick's motion to suppress. Thank you very much, counsel. The case is taken under advisement, and the court will be in recess until 2 o'clock.